No. 23,743.

THE STATE OF KANSAS, *Appellee*, v. THE STEFFEN-BRETCH ICE &
ICE CREAM COMPANY, *Appellant*.

No. 23,744.

THE STATE OF KANSAS, *Appellee*, v. THE WICHITA ICE & COLD
STORAGE COMPANY, *Appellant*.

No. 23,745.

THE STATE OF KANSAS, *Appellee*, v. THE CRYSTAL ICE & FUEL
.COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

ANTITRUST ACT—*Violation Through a System of Ice Delivery—Evidence War-
rants Conviction*. The proceedings considered in an action for violating
the antitrust act through a single system for delivery of the product of
several ice manufactories, and *held*, a general finding of guilty was sus-
tained by the evidence, and error in the judgment of conviction was not
made to appear.

Appeals from Sedgwick district court, division No. 3; JESSE D. WALL, judge.
Opinion filed January 6, 1923. Affirmed.

*S. B. Amidon, Fred Stanley*, and *C. G. Yankey*, all of Wichita, for the ap-
pellants.

*Richard J. Hopkins*, attorney-general, *C. B. Griffith, Dennis Madden*, as-
sistant attorneys-general, and *James A. Conly*,· county attorney for the.
appellee.

The opinion of the court was delivered by

BURCH, J.: The defendants were.found guilty of violating the
statute relating to trusts, and appeal.

A separate information, containing five counts, was filed against
each defendant. The counts charged, in order, violations of the
five subdivisions of section 6409 of the General Statutes of 1915.
A jury was waived, and the cases were tried together by the court.
The defendants were found guilty on counts one, three,· and five,
and were acquitted on counts two and four. The appeals were
heard together in this court, are alike in all respects, and may
be disposed of in one opinion.

The state's contention was that the ice companies of Wichita,
manufacturing and selling substantially all the ice supplied to the

city, committed the breaches of the statute charged in the information, by a combination of capital and acts, and by obligations and agreements centering in and about a single system for the delivery of ice. The defense was that the system did not possess the obnoxious features attributed to it by the state; that the single system of delivery is the only correct, economical and efficient system for city delivery of ice; that a statute which would prohibit such a system would be inimical to the public welfare; that the antitrust act ought not to be interpreted in a manner which would accomplish such a result; and that, if the principle of interpretation stated by Chief Justice White in the case of *Standard Oil Co. v. United States*, 221 U. S. 1, be applied to the act, the defendants were not guilty.

The court did not make findings of fact covering the issues, but filed a written memorandum of decision, which contained a discussion of portions of the evidence and the court's conclusions. Charles Phillips, managing officer of the Arctic Ice & Refrigerating Company, which participated in the delivery system but was not prosecuted, testified in detail to facts showing flagrant violation of the statute. The managers of the defendants contradicted him, and gave a different exposition of the delivery system. The court spoke of the conflict in the evidence, and said the facts and circumstances which were undisputed must control the decision. The delivery scheme which was the subject of the prosecution included what was called the City Ice Delivery Company. What this name stood for, and the precise relation to the defendants of whatever the name designated, were sharply contested facts. The court said the controversy need not be determined. Leaving these subjects at one side, the court adverted to facts which it deemed sufficient to sustain the charges contained in counts one, three, and five. In the memorandum, however, the court referred to other facts besides those specifically mentioned, which indicated violation of the statute. The final conclusions were stated as follows:

"The defendants and each of them will be and are found guilty of the violation of the law as charged in the first, third and fifth counts of the amended information.

.   .   .   .   .   .   .   .   .   .   .   .   .

"The court has carefully considered the authorities submitted by counsel in the case; and after considering the evidence in the case, can reach no other conclusion than that there has been a violation of the law as charged in the first, third and fifth counts of the amended information in the respective cases."

The judgment contained a general finding of guilty on counts one, three, and five.

The skeleton of the delivery system was this: The defendants turned over to one Severance their equipment for the delivery of ice. Severance, operating as the City Ice Delivery Company, took ice from the defendants and marketed it. Out of the receipts from sales to customers he paid all the expenses of delivery. Included in the expense account was a rent charge for a portion of the equipment belonging to the defendants. The defendants claimed they sold the product of their plants to the City Ice Delivery Company. Phillips said Severance was a hired man, drawing $250 per month. On the books of the dummy company the defendants were credited with ice they delivered, at prices which they fixed. The ice was sold at prices which the defendants fixed, and the defendants were to be paid the first part of the week following the week of delivery. Phillips testified, and the court said the evidence showed, the profits which would have accrued to the City Ice Delivery Company, if it had been a genuine purchaser, were absorbed by the defendants and their coadjutors, by simply raising the price of ice to Severance. Incidentally it may be remarked that an audit of the books of the City Ice Delivery Company, which is one of the "undisputed" facts in the case, disclosed that Severance's withdrawals amounted to $250 per month. If the City Ice Delivery Company was not what the defendants claimed it to be, and was even substantially what Phillips claimed it to be, the fundamental premise of the defense was destroyed, and there was abundant evidence to sustain the general finding of guilt. What can this court do, with the record in this condition?

This court is not bound by the district court's memorandum, which does not purport to state findings of all the facts pertaining to the issues, or for that matter, findings of fact at all. Probably the court did not express its meaning accurately when it said undisputed facts and circumstances must control the decision. It probably meant that undisputed facts and circumstances were sufficient to furnish a sound basis for the decision. However, the defendants did not complain, and the state was content with the general finding. This court cannot determine the credibility of witnesses. It cannot weigh disputed testimony. But all the evidence is here, and the judgment may not be reversed for want of evidence, when the record contains abundant evidence to sustain it. It is useless to discuss the force

of the facts picked out for comment by the district court, because if this court should agree with the defendants, the state is entitled to say the record contains ample proof of unlawful intention fully accomplished. It is useless to interpret the statute, because, under the state's theory of the evidence, the defendants are guilty under their own theory of the law. Under these circumstances, the court holds the general finding of guilty cannot be overthrown, and the defendants have not shown error in the judgment.

The judgment of the district court is affirmed.